N.N., a minor by her Guardian Ad Litem, Michael J. Donovan, Linda J. Schneider and T.E.N., Plaintiffs-Appellants-Cross Respondents,

v.

MORAINE MUTUAL INSURANCE COMPANY, and Threshermen's Mutual Insurance Company, Defendants-Respondents-Cross Appellants-Petitioners.

Supreme Court

*No. 88-0578. Argued October 5, 1989.—Decided January 17, 1990.*

(Also reported in 450 N.W.2d 445.)

For the defendants-respondents-cross appellants-petitioners there were briefs by *Frank K. Steeves, Laurie J. McLeRoy,* and *Riordan, Crivello, Carlson &*

■
■

*Mentkowski, S.C.,* Milwaukee, and oral argument by *Ms. McLeRoy.*

For the plaintiffs-appellants-cross respondents there was a brief by *Michael J. Donovan,* and *Hausmann, McNally & Hupy, S.C.,* Milwaukee, and oral argument by *Mr. Donovan.*

STEINMETZ, J.   The issue in this case is whether the facts indicate that the insured's acts were intentional and, therefore, the granting of the motion for summary judgment was appropriate as to holding there was no homeowner's insurance coverage.[1] The circuit court answered this in the affirmative, and the court of appeals reversed.[2]

■

We hold that the insured's plea of guilty to the crime of sexual abuse removed him from coverage under his homeowner's policy of insurance which specifically excluded harm caused by his intentional acts.[3]

John Metz, the defendant in the criminal action, was charged with first degree sexual assault to which he pled guilty, was convicted and sentenced. Subsequently,

---

[1]Collateral estoppel was raised as an issue in this case. The issue was whether the victim N.N. was collaterally estopped from claiming the acts of the defendant were negligent conduct rather than intentional behavior evidenced in the criminal proceeding. Collateral estoppel is not considered in this case since we hold the granting of the motion for summary judgment by the trial court was correct.

[2]*N.N. v. Moraine Mut. Ins. Co.,* 148 Wis. 2d 311, 434 N.W.2d 845 (Ct. App. 1988).

[3]*See also Raby v. Moe,* 153 Wis. 2d 101, 450 N.W.2d 452 (1990), filed this same date, discussing the applicability of intentional act exclusion in homeowner's insurance policy where issue in civil action also involved a prior criminal conviction.

the plaintiff, N.N., by her guardian ad litem and her parents started an action in circuit court against defendants John Metz, Moraine Mutual Insurance Company and Threshermen's Mutual Insurance Company. This civil action was commenced alleging defendant Metz "negligently and outrageously sexually abused the minor," N.N., a nine-year-old, and sought recovery of compensatory and punitive damages. Plaintiffs are seeking to recover damages under the homeowner's insurance policy issued to John Metz's parents by Moraine Mutual Insurance Company and 100 percent reinsured by Threshermen's Mutual Insurance Company.

The homeowner's policy provided that:

> This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence.

The policy defines "occurrence" as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The policy also excludes coverage "to bodily injury or property damage which is either expected or intended from the standpoint of the Insured."

On or about October 2, 1986, plaintiffs filed an action in Washington county circuit court against the defendants. This complaint was amended on or about February 10, 1987, setting forth a cause of action for declaratory judgment on the insurance coverage question. Defendant insurance companies filed an answer to the amended complaint on March 2, 1987. They requested in part dismissal of plaintiff's complaint upon

its merits. As a result of a telephone scheduling conference held May 20, 1987, the parties agreed that the insurance question would be presented on a motion for summary judgment by the defendants. This motion was filed on August 3, 1987.

On December 29, 1987, oral arguments on the summary judgment issue were heard before the Honorable Richard T. Becker in the Washington county circuit court. Moraine Mutual Insurance Company and Threshermen's Mutual Insurance Company contended that there was no genuine issue of material fact since the assault on the plaintiff giving rise to this lawsuit was intentionally inflicted. Prior to the hearing on the summary judgment motion in this matter, John Metz committed suicide. On February 5, 1988, the trial court issued its decision granting summary judgment to the defendants on the basis that intentional acts were excluded from coverage under the homeowner's insurance policy. Judgment was entered February 29, 1988, dismissing the action.

The facts were developed through N.N.'s testimony at the preliminary hearing, the plea hearing and his statement to his insurance company. All of which are undisputed. In November, 1984, John Metz went to the Sportsmen's Bar in Washington county between 7:30 and 8:00 p.m. N.N.'s mother was there bartending that evening. John Metz drank beer at the Sportsmen's Bar to the point of becoming intoxicated. Later he left the Sportsmen's Bar and went to the N. residence. It is undisputed that he arrived at N.N.'s home and his truck was parked outside N.N.'s residence.

John Metz was familiar with N.N.'s home as he had previously dated N.N.'s older sister. He had also on occasion previously spent the night at N.N.'s residence and had still maintained a friendship with that sister.

John Metz in his statement recalled that after arriving at N.N.'s residence he walked up to the house and knocked on the door. He recalled that the door was unlocked, and he then entered N.N.'s house. He found N.N. and the older sister in the living room asleep. He recalled unsuccessfully trying to awaken the sister. N.N. was lying on the floor one to two feet from the sister who was on the couch. John Metz then recalled lying down one to two feet from N.N. The sexual assault occurred on the floor, and he then fell asleep there.

According to the testimony of N.N. at the preliminary hearing, John Metz lay down next to her, kissed her on the lips, touched her chest and vagina through her clothing, and then told her not to tell anybody. His words were: "Please don't tell anybody."

Several months subsequent to the assault, Metz was charged with first degree sexual assault in violation of sec. 940.225(1)(d), Stats.[4] Probable cause was found at the preliminary hearing and he was bound over for trial. Metz pled not guilty at his arraignment. He changed his plea to guilty at a subsequent court appearance.

At the hearing at which he entered his guilty plea, circuit Judge James B. Schwalbach on the record questioned Metz who was represented by an attorney. Metz was found guilty using the evidence received at the preliminary examination as a factual basis consistent with the guilty plea. The trial court found his actions to be

---

[4]Sec. 940.225(1)(d), Stats. (1981–82) provided:

 **(1)  First degree sexual assault.** Whoever does any of the following is guilty of a Class B felony:
 (d)  Has sexual contact or sexual intercourse with a person 12 years of age or younger.

Section 940.225(1)(d), Stats., repealed by 1987 Act 332, sec. 30, effective July 1, 1989; *see* sec. 948.02(1) (1987) created by 1987 Act 332, sec. 55, effective July 1, 1989.

intentional, and he was sentenced to the Wisconsin prison system for a period not to exceed three years. The sentence was stayed and he was placed on probation for a period of four years.

In the civil case before us, Metz's deposition reiterated his inability to remember anything as a result of his intoxication the evening in question. This testimony was consistent with a statement to his insurance company in which he stated he did not remember anything about this incident.

Metz, in changing his plea to guilty at the March 21, 1986, hearing, admitted to having sexual contact with another person in violation of sec. 940.225(1)(d), Stats. Further, he admitted at the criminal hearing upon questioning by the Honorable James B. Schwalbach that he understood that in pleading guilty to sexual contact, he admitted to an intentional touching of an intimate part of the other person. His guilty plea was not a result of a plea bargain, rather it constituted a voluntary statement and plea on his part.

The issue upon which we base our decision asks us to determine whether summary judgment was proper on the facts on the issue of Metz's intent when he pled guilty to sexual assault, a crime requiring intent.

*Juneau Square Corp. v. First Wis. Nat. Bank,* 122 Wis. 2d 673, 681, 364 N.W.2d 164, 168–69 (Ct. App. 1985) adequately summarizes the process of review of summary judgment as follows:

> On review of a summary judgment, our standards are the same as those used by the trial court. Summary judgment is appropriate where the pleadings, depositions, affidavits and other papers on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Sec. 802.08(2), Stats. A

moving defendant makes a prima facie case for summary judgment by showing a defense which would defeat the plaintiff. To defeat such a prima facie case, the plaintiff must set forth facts showing there is a genuine issue for trial. (Citations omitted.)

The determinative fact in this case, that Metz pled guilty to an intentional act, is undisputed. This court is not bound by a lower court's finding based upon undisputed evidence when that finding is ultimately a conclusion of law. *Village of Sister Bay v. Hockers,* 106 Wis. 2d 474, 479, 317 N.W.2d 505, 507 (Ct. App. 1982).

Defendant insurance companies made their prima facie case for summary judgment based first upon the guilty plea of the defendant and additionally upon the fact that sexual assault is by its very nature an intentional act. A guilty plea by the defendant to the crime of sexual assault of a child as a matter of law constitutes an intent to harm.

The Metz insurance policy specifically excludes coverage for "bodily injury or property damage which is either expected or intended from the standpoint of the Insured." We concluded in *Pachucki v. Republic Insurance Co.,* 89 Wis. 2d 703, 714, 278 N.W.2d 898, 904 (1979), that such exclusionary language precludes coverage when it can be proved that the insured actor intended some harm or injury, regardless of the harm actually incurred.

A recent Wisconsin Court of Appeals case adopted a majority rule which narrowly extends *Pachucki* in cases involving sexual molestation of a minor. In *K.A.G. v. Stanford,* 148 Wis. 2d 158, 434 N.W.2d 790 (Ct. App. 1988), the court of appeals held that in narrow situations

91

intent to injure may be inferred as a matter of law. *Id.* at 163. In adopting this rule, the *K.A.G.* court listed two requirements that must be met: "First, the conduct must be intentional. Second, the conduct must be substantially certain to cause injury." *Id.*

The *K.A.G.* court adopted the rule and expressly noted that it did not conflict with the court of appeals decision in *N.N.* because the case now before us questions whether Metz intended to act when he assaulted N.N. The only issue before the *K.A.G.* court was whether the perpetrator intended to harm his victim. *See Id.* at 165 n. 4.

A plea of guilty constitutes an admission to all of the elements of the crime charged. *See Cross v. State,* 45 Wis. 2d 593, 173 N.W.2d 589 (1970) (comparing the collateral effects of a guilty plea to a plea of *nolo contendere* ). Before a judge may accept a plea of guilty from a defendant, that judge must follow strict procedural rules to satisfy himself that the defendant has made the plea knowingly and voluntarily and that the defendant understands the rights he waives by so pleading.[5] *See* sec. 971.08(1)(a), Stats.[6] The judge must also satisfy

[5]Waiver on a guilty plea includes waiver of nonjurisdictional defects and defenses, including claimed violations of constitutional rights, and waiver also applies in the case of no contest pleas. *See County of Racine v. Smith,* 122 Wis. 2d 431, 434, 362 N.W.2d 439, 441 (Ct. App. 1984) (citations omitted). Rights waived include the intoxication defense. *See State v. Guiden,* 46 Wis. 2d 328, 332–33, 174 N.W.2d 488, 491 (1970).

[6]The relevant language of sec. 971.08, Stats., reads:

**971.08 Pleas of guilty and no contest; withdrawal thereof.**

(1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:

(a) Address the defendant personally and determine that the

himself based on the facts of the case that there is a basis upon which to accept the plea. *See* sec. 971.08(1)(b).

In this case, it is undisputed, and the record clearly shows, that all of the requisite procedural safeguards to accepting Metz's guilty plea were satisfied. Metz spoke for himself when he assured the judge at the arraignment that he freely and voluntarily pled guilty. He stated he understood he admitted to intentionally committing a crime against a minor.[7] He also understood that he waived certain rights. The parties then stipulated to the use by the court of N.N.'s corroborating testimony at the preliminary hearing as the factual basis for showing intent and therefore accepting the guilty plea.

We agree with the trial court's conclusion that, by its definition, sexual assault against a minor is an intentional act. We therefore hold that the defendant's plea of guilty to the crime of sexual assault against a minor, accepted through correct procedure and based upon corroborating evidence, is sufficient to satisfy the intent to act requirement of the *K.A.G.* test.

---

plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

(b)   Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

*See also State v. Bangert,* 131 Wis. 2d 246, 389 N.W. 12 (1986).

[7]Section 940.225(5)(a), Stats., provides:

**940.225(5) Definitions. In** this section:
(a)   'Sexual contact' means any intentional touching of the intimate parts, clothed or unclothed, of a person to the intimate parts, clothed or unclothed, of another, or the intentional touching by hand, mouth or object of the intimate parts, clothed or unclothed, of another, if that intentional touching is for the purpose of sexual arousal or attempted battery under s. 940.19(1).

Section 940.225(5)(a) (1981). *See* sec. 948.01(5) created by 1987 Act 332, sec. 55, effective July 1, 1989.

A showing of intent to act is not enough to remove Metz from protection under his policy of insurance. Intent to injure must also be proved. Precedent set by the court of appeals in *K.A.G.,* 148 Wis. 2d 158, 165, follows the majority rule which states "that acts of sexual molestation against a minor are so certain to result in injury to that minor that the law will infer an intent to injure on behalf of the actor without regard to his or her claimed intent."[8]

Although Metz told the judge at his sentencing hearing that he was "sorry for what happened" and "never meant to do anything like that," his words of contrition are irrelevant under the circumstances. By his plea, he admitted committing a crime requiring intent to act. Because Metz intended the sexual assault on the child, the law will infer that he also intended to injure. The policy exclusion is effectively invoked as against Metz and also as against N.N. whose rights under the policy are derivative of his.

The compelling policy consideration for adopting the majority rule and precluding insurance recovery is well summarized by the United States District Court in *Whitt v. DeLeu,* 707 F. Supp. 1011 (W.D. Wis. 1989). There Judge Crabb stated that:

---

[8]*See Altena v. United Fire & Cas. Co.,* 422 N.W.2d 485, 490 (Iowa 1988) (involved adult victim); *Harpy v. Nationwide Mutual Fire Ins.,* 545 A. 2d 718, 723 (Md. Ct. Spec. App. 1988); *Linebaugh v. Berdish,* 376 N.W.2d 400, 405 (Mich. Ct. App. 1985); *Horace Mann Ins. Co. v. Ind. Sch. Dist. No. 656,* 355 N.W.2d 413, 416 (Minn. 1984); *Fireman's Fund Ins. Co. v. Hill,* 314 N.W.2d 834, 835 (Minn. 1982); *Rodriguez v. Williams,* 729 P. 2d 627, 630 (Wash. 1986); *but see MacKinnon v. Hanover Ins. Co.,* 471 A.2d 1166, 1168 (N.H. 1984); *State Auto Mut. Ins. Co. v. McIntrye,* 652 F. Supp. 1177, 1219 (N.D. Ala. 1987); *Zordan v. Page,* 500 So. 2d 608, 610–11 (Fla. Dist. Ct. App. 1986).

One of the main justifications for the minority approach . . . is that it benefits the victims by making possible another potential source of compensation for their injuries . . . However, the Wisconsin Court of Appeals and the other courts that have adopted the majority approach have determined that this benefit is outweighed by the effect of allowing sexual offenders to escape having to compensate minors for the harm that the courts have established is inherent in such offenses . . . The majority approach, followed by the Wisconsin Court of Appeals in *K.A.G.*, No. 88–0405, stands for the proposition that a person who sexually manipulates a minor cannot expect his insurer to cover his misconduct and cannot obtain such coverage simply by saying that he did not mean any harm. The courts following the majority approach have concluded that sexual misconduct with a minor is objectively so substantially certain *to* result in harm to the minor victim, that the perpetrator cannot be allowed to escape society's determination that he or she is expected to know that.

*Id.* at 1016.

The court of appeals refused to affirm the lower court's grant of summary judgment based on the alternative grounds applied herein because it found plausible evidence that Metz was so drunk on the night in question that he could not form the requisite intent. We disagree. The court of appeals came to its conclusion on evidence based upon Metz's own statement that he drank beer on the evening in question to the point of becoming inebriated. No evidence—empirical, expert or otherwise—was offered to corroborate his condition at that time. At best, his statements that he was drunk that night are self-serving attempts to avoid culpability. Likewise, use of this unsubstantiated evidence by the

95

plaintiffs herein represents an attempt to avoid the policy exclusion. We conclude on the basis of the guilty plea and consistent evidence of intentional acts supporting the acceptance of the plea that the intentional nature of Metz's behavior has been demonstrated. Here, the undisputed facts leading up to the assault indicate that Metz possessed the requisite state of mind to have intended the act.

By his statements, Metz remembered standing outside the victim's home, and he remembered knowing that he was at the N. home. He remembered knocking on the front door, receiving no reply, realizing the door was unlocked and entering the home. He remembered walking into the living room and seeing and recognizing N.N.'s sister who was asleep on the couch. He also remembered noting that N.N. was asleep on the floor a few feet from the couch. He remembered attempting to awaken the sister, failing to do so, and lying down on the floor next to N.N.

He claimed, however, to remember nothing that transpired just seconds after joining N.N. on the floor. This memory lapse, called an "alcoholic blackout" by the plaintiffs, is implausible in light of N.N.'s corroborating statement that Metz instructed her after the assault not to tell anyone what he had done. The facts as presented in the record and relied on in the briefs of both the plaintiffs and the defendant insurance companies and the divergent inferences each party asserts based upon those facts lead to only one valid conclusion which is that Metz's actions were calculated and performed consciously. Neither his intent to act nor his intent to do harm can, on these facts, be negated by a defense of intoxication.

The dissent asserts that we have "interposed ourselves as the fact finder in this case." We disagree.

Instead, we stand in agreement with the findings of the trial court. At the criminal arraignment, Judge Schwalbach found that Metz had freely and voluntarily entered his plea of guilty. The judge also accepted a stipulation of the preliminary hearing evidence in support of the guilty plea. The judge then found and adjudged Metz guilty of having had sexual contact with N.N. in violation of sec. 940.225(1)(d), Stats., which requires a finding of intent to act.

In the civil case in his decision on motion for summary judgment, Judge Richard T. Becker found on the undisputed facts that no coverage was afforded because "Metz's actions were intentional." The judge based his decision on the statutory definition of "sexual contact," sec. 940.225(5)(b), Stats., on the language of Wisconsin Jury Instructions—Criminal No. 1207 and on Judge Schwalbach's acceptance of the guilty plea in the criminal proceedings.

██ We hold that sexual assault against a minor is an intentional act and that intent to act is shown by a voluntary plea of guilty. Intent to harm is then inferred by law. We further hold that the defense of diminished capacity due to intoxication is inapplicable under these circumstances. Since no material facts remain at issue, summary judgment in favor of the defendant insurance companies is appropriate.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). This case, like *Raby v. Moe,* 153 Wis. 2d 101, 450 N.W.2d 452 (1990), involves the interpretation of the intentional injury exclusion in homeowners insurance policies. The principal issue presented by this case is

whether the insured intended to commit the act in question. Because I believe that, under *Pachucki v. Republic Insurance Co.,* 89 Wis. 2d 703, 278 N.W.2d 898 (1979), the intent to act is a question of fact for determination by the fact finder and not this court, I would affirm the decision of the court of appeals. See *N.N v. Moraine Mut. Ins. Co.,* 148 Wis. 2d 311, 434 N.W.2d 845 (Ct. App. 1988).

In *Pachucki,* this court established a two-prong subjective test for determining whether an insured's acts are excluded from coverage as "expected or intended" bodily injury. Under the first prong of the test, the fact finder must determine whether the insured intended to commit the act. Under the second prong, the fact finder must determine whether the insured intended to injure. Both the intent to act and the intent to injure are subjective tests, not objective ones, and present questions for the fact finder. See *Raby, supra,* 153 Wis. 2d at 115–120 (Abrahamson, J., dissenting).

As the court of appeals properly stated, the record of this case clearly indicates that there is a material issue of fact, namely, whether John Metz intended to sexually assault N.N. Although Metz entered a guilty plea to the crime of sexual assault of a minor, one element of which is intent to act, he repeatedly asserted at both the criminal and civil proceedings that he did not intend to commit the act.

Under *Pachucki,* intent to commit the act is a factual determination left to the fact finder. Rather than defer to a fact finder to determine whether Metz intended to commit the act, the majority opinion interposes itself as the fact finder in this case and determines that Metz's plea of guilty in a criminal case establishes the intent to commit an act that bars the victim's civil action under the insurance policy. See majority at 95–96.

98

The majority opinion says that collateral estoppel is not an issue in this case.[1] How does the holding differ from the adoption of a doctrine of collateral estoppel? Hasn't the majority opinion held as a matter of law (and regardless of conflicting inferences that might be drawn from the record) that the victim is estopped to raise the issue of intent when the offender pleads guilty to an intentional offense? The answer seems to be yes. See also *Raby v. Moe,* 153 Wis. 2d at 115-120 (Abrahamson, J., dissenting).

Relying on *K.A.G. v. Stanford,* 148 Wis. 2d 158, 434 N.W.2d 790 (Ct. App. 1988), I conclude that the majority opinion properly determined that under the second prong of the *Pachucki* test, the court should infer subjective intent to injure as a matter of law when the insured intentionally sexually assaults a minor.[2] I reach this conclusion because of the established legislative policy in this state. The legislature has in recent years continually revised the statutes to protect children from physical and psychological damage. It is apparent from the legislation that the legislature has made the public policy decision that harm is inherent in a sexual abuse to a child. In keeping with this public policy determination,

[1]Unfortunately, the majority opinions in both this case and *Raby* fail to discuss the effect of their holdings on *Crowall v. Heritage Mutual Ins. Co.,* 118 Wis. 2d 120, 346 N.W.2d 327 (Ct. App. 1984), and *Kirchefski v. American Family Mutual Ins. Co.,* 132 Wis. 2d 74, 390 N.W.2d 76 (Ct. App. 1986), two cases dealing with collateral estoppel and with the effect of convictions of crime on a civil action involving insurance policies.

[2]A number of other state courts have concluded that while intent to injure is a subjective determination under the insurance policy, they will infer an intent to injure in cases of sexual abuse of minors. See cases cited in *Whitt v. De Leu,* 707 F. Supp. 1011, 1014 n. 4 (W.D. Wis. 1989).

I believe this court must presume as a matter of law that the offender intended to cause the injury that the legislature recognizes as the unavoidable consequence of the criminal offense of sexual assault on a child.

Because the record presents a factual issue on the question of intent to act, I dissent.